**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **D&A DESIGNS LLC, et al.,** | * | |
| **Plaintiff,** | * | |
| **v.** | * | **CIVIL NO. JKB-20-2993** |
| **FOX TELEVISION STATIONS, LLC,** | * | |
| **Defendant.** | * | |

\*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*

**MEMORANDUM**

D&A Designs, LLC ("D&A Designs") and its principals, Dereky Martin-Hagler, Alfred Hagler, Jr., and Derek Brown (collectively, "Plaintiffs") filed suit against Fox Television Stations, LLC d/b/a WTTG Fox 5 ("WTTG"), Lajoie Grimes, and Tiffany Veney in the Circuit Court of Maryland for Baltimore County. WTTG removed the case to this Court pursuant to 28 U.S.C. §§ 1332(a)(1), 1441(a), and 1446. (ECF No. 1.) The Court granted Plaintiffs' motion to voluntarily dismiss Defendants Grimes and Veney from this action. (ECF No. 16.) WTTG now moves to dismiss for failure to state a claim upon which relief can be granted under Federal Rules of Civil Procedure 12(b)(6) and 81(c)(2)(C) and requests a hearing. (ECF No. 11.) No hearing is required. *See* Local Rule 105.6 (D. Md. 2018). For the reasons set forth below, WTTG's motion will be granted in part and denied in part.

*I. Factual Background[1]*

On June 13, 2019, local news station WTTG aired a story detailing Maryland residents Tiffany Veney and Lajoie Grimes's claims that D&A Designs "defrauded" them after agreeing to

---

[1] When assessing a motion to dismiss, courts construe the facts in the Complaint in the light most favorable to the plaintiff. *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997).

provide interior design services for their home (the "News Report"). (Compl. ¶ 11, ECF No. 4.) Although the News Report described Veney and Grimes as a couple, Plaintiffs allege instead that they were "co-workers in an employer/employee relationship," who had formed a now-forfeited corporation called Premier Home Solutions, LLC ("Premier Home Solutions"). (*Id.* ¶¶ 14, 44.) In Plaintiffs' view, WTTG presented a misleading picture of Veney and Grimes as "a married couple to garner sympathy from its viewing audience." (*Id.* ¶ 15.)

In the News Report, which was broadcast to viewers in the greater Washington, D.C. area, Veney and Grimes allege that they paid D&A Designs $10,000 for the "design, furniture, and staging of the master bedroom" in their house, but the furniture arrived late and included damaged items. (*Id.* ¶¶ 11, 17.) Plaintiffs argue that the News Report mischaracterized D&A Designs' "proposal" to provide services and did not mention the absence of a written contract between the parties. (*Id.* ¶ 17.) In addition to an interview with Veney and Grimes, the News Report showed footage of a picture frame with a few "nicks and chips" and the $10,000 check that Veney and Grimes purportedly used to pay for D&A Designs' services. (*Id.* ¶ 11.) WTTG blurred the top left corner of the check, which included the name and address of Premier Home Solutions, Veney and Grimes's business. (*Id.* ¶¶ 12–13.) Plaintiffs contend that WTTG obscured Premier Home Solutions' information on the check to mislead viewers into believing that a mere "garden variety contract dispute" between two businesses constituted a case of consumer fraud. (*Id.* ¶ 12.)

Additionally, Plaintiffs contend that WTTG published details about alleged previous criminal charges against Plaintiff Alfred Hagler, Jr. in order to bolster the credibility of Veney and Grimes's fraud claims. (*Id.* ¶ 22.) The News Report alleged that Plaintiff Hagler had previously been charged with misdemeanor theft in Prince George's County, but "failed or refused to mention that the charges were from 2008 and dismissed by the State." (*Id.*) Plaintiffs allege that WTTG's

reporting about Plaintiff Hagler "le[ft] viewers with the false impression that Hagler was a thief and convicted in a court of law, and that the current fraud allegations are true." (*Id.*)

Further, WTTG reported that other anonymous viewers had claimed that they had been defrauded by D&A Designs. (*Id.* ¶¶ 19, 21.) In an online update to the News Report, WTTG Reporter Ike Ejiochi alleged that "at least four other individuals contacted [WTTG] claiming they too were *defrauded* out of goods and services by D&A Designs." (*Id.* ¶ 21 (emphasis in original).) Additionally, Plaintiffs allege that WTTG Anchor Jim Lokay told viewers that "people have been in touch with this newsroom" and that "there's [sic] a lot of people out there [claiming fraud]," and WTTG Anchor and Reporter Anne Cutler responded, "[Y]eah a lot, I would say 'a flood' to be perfectly honest . . . " (*Id.* ¶ 19.) Plaintiffs do not specify the context or timing of Lokay and Cutler's comments.

## II. Procedural History

In April 2019, about two months before the News Report aired, Grimes and Veney, both citizens of Maryland, sued Plaintiffs in the Baltimore County Circuit Court for breach of contract and violation of the Maryland Consumer Protection Act (the "first Maryland state action"). (Removal Not. Ex. A, ECF No. 1-2.) In the first Maryland state action, Grimes and Veney claimed that they had hired D&A Designs to provide interior design services for their home and were victims of a "scam" by Plaintiffs. (*Id.* at 4, 6.) Grimes and Veney claim that they paid D&A Designs $3,000 for "professional interior design consulting" and $10,000 in advance payments for furniture for their master bedroom. (*Id.* at 5.) In total, Grimes and Veney allege that they paid D&A Designs "in excess of $30,000 for furniture, lighting, bedding, paintings, wallpaper/tile and accessories via [D&A Designs], the majority of which goods were not received within the parties' agreed time limit or in usable form." (*Id.* at 4.)

In August 2019, about two months after the publication of the News Report, Plaintiffs filed counterclaims in the first Maryland state action against Veney and Grimes, alleging defamation, intentional infliction of emotional distress, negligence, and unjust enrichment. Additionally, Plaintiffs filed a third-party complaint against WTTG for its publication of the News Report, which the Baltimore County Circuit Court dismissed as procedurally improper. (Removal Not. Ex. E at 1, ECF No. 1-6.)

Plaintiffs filed a separate suit against WTTG, Veney, and Grimes on August 27, 2020 (the "second Maryland state action"). (Removal Not. Ex. C, ECF No. 1-4.) WTTG removed the second Maryland state action to this Court on October 15, 2020 (Removal Not., ECF No. 1),[2] and Defendants Veney and Grimes have since been voluntarily dismissed from this action (ECF No. 16). As a result, only Plaintiffs' claims against WTTG for defamation, false light invasion of privacy, intentional infliction of emotional distress, and negligence remain.

WTTG now moves to dismiss all of Plaintiffs' remaining claims for failure to state a claim upon which relief can be granted under Federal Rules of Civil Procedure 12(b)(6) and 81(c)(2)(C). (Mot. Dismiss, ECF No. 11.)

## III. Legal Standards

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted

---

[2] There was not complete diversity in this case at the time of its removal to this Court because Defendants Veney and Grimes and Plaintiffs Martin-Hagler, Hagler, and D&A Designs are all citizens of Maryland. The Court finds that it nonetheless has subject matter jurisdiction over this diversity dispute under the fraudulent joinder doctrine. *See Weidman v. Exxon Mobil Corp.*, 776 F.3d 214, 218 (4th Cir. 2015) (quoting *Marshall v. Manville Sales Corp.*, 6 F.3d 229, 233 (4th Cir. 1993) (explaining that a district court "can retain jurisdiction upon the non-moving party showing either that the plaintiff committed outright fraud in pleading jurisdictional facts, or that 'there is *no possibility* that the plaintiff would be able to establish a cause of action against the in-state defendant in state court'") (emphasis in original). Here, Plaintiffs' claims against Veney and Grimes in the current action entirely duplicate the counterclaims against Veney and Grimes in the first Maryland state action such that Plaintiffs could not prevail in those claims in a Maryland state court. *See Sensormatic Sec. Corp. v. Sensormatic Elecs. Corp.*, 452 F. Supp. 2d 621, 628 (D. Md. 2006) (precluding duplicative suits which would "put the parties to the cost and vexation of multiple lawsuits"). As such, the initial joinder of Defendants Veney and Grimes in this action does not defeat this Court's diversity jurisdiction.

as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Facial plausibility exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. An inference of a mere possibility of misconduct is insufficient to support a plausible claim. *Id.* at 679. Rather, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "A pleading that offers 'labels and conclusions' or . . . 'naked assertion[s]' devoid of 'further factual enhancement'" will not suffice. *Iqbal*, 556 U.S. at 678 (alteration in original) (quoting *Twombly*, 550 U.S. at 555, 557). Although when considering a motion to dismiss, a court must accept as true all factual allegations in the complaint, this principle does not apply to legal conclusions couched as factual allegations. *Twombly*, 550 U.S. at 555.

Courts may consider documents attached to a motion to dismiss "when the document is integral to and explicitly relied on in the complaint, and when the plaintiffs do not challenge the document's authenticity." *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 606–07 (4th Cir. 2015) (quoting *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004)). Additionally, courts may consider "facts and documents subject to judicial notice," including "'relevant facts obtained from the public record,' so long as these facts are construed in the light most favorable to the plaintiff along with the well-pleaded allegations of the complaint." *Clatterbuck v. City of Charlottesville*, 708 F.3d 549, 557 (4th Cir. 2013) (quoting *B.H. Papasan v. Allain*, 478 U.S. 265, 283 (1986)).

In support of its motion, WTTG relies on various exhibits, including the News Report published by WTTG and previous Maryland criminal and civil court documents. The News Report is integral to the Complaint—indeed, it forms the basis of Plaintiffs' claims against WTTG—and

Plaintiffs do not challenge its authenticity. Accordingly, the Court will consider the News Report

in the resolution of this motion to dismiss. (*See* Mot. Dismiss Ex. G, ECF No. 11-9.) Additionally,

WTTG relies on Maryland criminal records and filings in Maryland civil court actions, all of which

are public records and will be considered as well. (Mot. Dismiss Exs. A–F, I, ECF Nos. 11-3, 11-

4, 11-5, 11-6, 11-7, 11-8, 11-11.)

## IV.  Analysis

WTTG moves to dismiss Plaintiffs' claims for defamation (Count II), false light invasion of

privacy (Count III), intentional infliction of emotional distress (Count IV),[3] and negligence (Count

V).

### A.  Count II: Defamation

To state a claim for defamation under Maryland law, a plaintiff must allege "(1) that the

defendant made a defamatory statement to a third person, (2) that the statement was false, (3) that

the defendant was legally at fault in making the statement, and (4) that the plaintiff thereby suffered

harm." *Indep. Newspapers, Inc. v. Brodie*, 966 A.2d 432, 448 (Md. 2009) (quoting *Offen v.

Brenner*, 935 A.2d 719, 723–24 (Md. 2007)) (internal quotation marks omitted).

WTTG claims that it is shielded from liability for the allegedly defamatory statements in

its News Report by the "fair report" privilege. (Mot. Dismiss Mem. Supp. at 9, ECF No. 11-1.)

The fair report privilege, which arises under Maryland common law, is a qualified privilege to

publish fair and accurate reports of legal and official proceedings. *Piscatelli v. Van Smith*, 35 A.3d

1140, 1147–48 (Md. 2012). Unlike other qualified privileges, which are forfeited upon a showing

of the defendant's actual malice, the fair report privilege is lost when a defendant's report is not

fair and substantially accurate. *Id.* at 1149. As such, "[m]inor inaccuracies do not amount to

---

[3] Plaintiffs labeled this "Count VI" in their Complaint, but this appears to be a typographical error, so the Court re-labels this claim as "Count IV" for purposes of this Memorandum.

6

falsity so long as 'the substance, the gist, the sting of the libelous charge be justified.'" *Chesapeake Publ'g Corp. v. Williams*, 661 A.2d 1169, 1174 (Md. 1995) (quoting *Batson v. Shiflett*, 602 A.2d 1191, 1212 (Md. 1992)) (alteration in original). Further, the fair report privilege protects "not only comprehensive accounts of judicial proceedings, but [also] accounts focusing more narrowly on important parts of such proceedings." *Williams*, 661 A.2d at 1175 (quoting *Rosenberg v. Helinski*, 616 A.2d 866, 874 (Md. 1992)) (internal quotation marks omitted) (alteration in original).

As this Court has explained, the applicability of a qualified privilege to a defamation claim is a question of law, and the defendant bears the burden of establishing that the privilege applies. *Doe v. Salisbury Univ.*, 123 F. Supp. 3d 748, 760 (D. Md. 2015). Although courts do not typically consider affirmative defenses at the motion to dismiss stage, *E. Shore Markets, Inc. v. J.D. Assocs. L.P.*, 213 F.3d 175, 185 (4th Cir. 2000), courts have granted Rule 12(b)(6) motions "based only on the face of the complaints at issue and where there could be no dispute, construing the facts in the light most favorable to the plaintiff, that the reporting was fair and substantially accurate." *See Olukoya v. Sowore*, Civ. No. TDC-18-2922, 2019 WL 3501567, at *4 (D. Md. Aug. 1, 2019); *Nanji v. Nat'l Geographic Soc'y*, 403 F. Supp. 2d 425, 433–34 (D. Md. 2005).

Viewing the facts in the light most favorable to Plaintiffs, the Court does not find that the fair report privilege applies as a matter of law. WTTG fails to meet its burden of establishing that its News Report and the corresponding updates regarding fraud claims by others meet the test of fairness and substantial accuracy. *See Olukoya*, 2019 WL 3501567, at *4 (citing *Heath v. Hughes*, 197 A.2d 104, 107 (Md. 1964)) (explaining that "[e]ach statement must be viewed in the context of the whole article to fairly assess its alleged falsity"). Even assuming—without deciding—that the fair report privilege would apply to WTTG's reporting on allegations contained in Veney and Grimes's civil complaint against Plaintiffs, WTTG reported on claims beyond the scope of the first

Maryland state action. An update to the News Report allegedly stated that "at least four other individuals contacted [WTTG] claiming they too were *defrauded* out of goods and services by D&A Designs," and a WTTG anchor allegedly described a "flood" of fraud allegations against D&A Designs. (Compl. ¶¶ 19, 21.) The claims of anonymous consumers calling into WTTG were not included in the civil complaint of the first Maryland state action (*see* Removal Not. Ex. A), and as a result, a factual dispute remains with respect to the fairness and accuracy of WTTG's News Report that cannot be resolved at the motion to dismiss stage. Accordingly, Plaintiffs' defamation claim survives dismissal.

## B.   Count III: False Light Invasion of Privacy

Under Maryland law, a tort for false light invasion of privacy occurs when a defendant gives publicity to a matter placing the plaintiff before the public in a "false light" that would be highly offensive to a reasonable person and where the defendant had knowledge of the falsity of— or acted in reckless disregard as to the falsity of—the publicized matter. *Furman v. Sheppard*, 744 A.2d 583, 587 (Md. Ct. Spec. App. 2000). To survive a motion to dismiss, a plaintiff must allege facts establishing "above the speculative level" that a defendant made a knowingly or recklessly false statement. *Mayfield v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*, 674 F.3d 369, 377 (4th Cir. 2012) (quoting *Twombly*, 550 U.S. at 555) (internal quotation marks omitted).

Plaintiffs claim that WTTG portrayed Plaintiffs in a false light by reporting on previous criminal charges against Plaintiff Alfred Hagler, Jr. (Compl. ¶ 50.) Plaintiffs allege that although WTTG "knew the theft charge against Hagler from 2008 (well over 10 years ago) was dismissed by the State," WTTG declined to include such information, and the effect of this omission was to "portray[] Plaintiffs as part of an organization run by thieves and 'scammers' who defrauded homeowners and have a history of engaging in theft." (*Id.*) Plaintiffs offer no factual allegations

8

to support claims that WTTG published knowing falsehoods about Plaintiff Hagler's past criminal charges. Indeed, Plaintiffs do not challenge the authenticity of state criminal records attached to WTTG's motion to dismiss, which establish that Plaintiff Hagler pled guilty to acting as a contractor without a license and was charged with theft in 2013. (Mot. Dismiss Exs. A–F.) As a result, Plaintiffs' false light invasion of privacy claim fails to survive the motion to dismiss.

### C.   Count IV: Intentional Infliction of Emotional Distress

Under Maryland law, a claim for intentional infliction of emotional distress requires four elements: "(1) [t]he conduct must be intentional or reckless; (2) [t]he conduct must be extreme and outrageous; (3) [t]here must be a causal connection between the wrongful conduct and the emotional distress; [and] (4) [t]he emotional distress must be severe." *Batson*, 602 A.2d at 1216 (internal quotation marks omitted) (quoting *Harris v. Jones*, 380 A.2d 611, 614 (Md. 1977)). To meet the second prong of this test, a plaintiff must show that the defendant's conduct was "so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* (quoting *Harris*, 380 A.2d at 614)). Whether actions rise to the level of outrageousness is a question for the court, and it is exceedingly rare for Maryland plaintiffs to meet this burden. *See Young v. Hartford Accident & Indem. Co.*, 492 A.2d 1270 (Md. 1985) (finding that a worker's compensation insurer intentionally inflicted emotional distress when his "sole purpose" in insisting that claimant submit to a psychiatric examination was to harass her and force her to abandon her claim or commit suicide).

Plaintiffs allege that WTTG engaged in "extreme and outrageous conduct" by publishing "a knowingly false account" of fraud and theft claims. (Compl. ¶ 56.) Without more factual allegations to support its claim, Plaintiffs' conclusory label of WTTG's conduct as "extreme and outrageous" falls short of the federal pleading standards. *Iqbal*, 556 U.S. at 678 (alteration in

original) (quoting *Twombly*, 550 U.S. at 555, 557) ("A pleading that offers 'labels and conclusions' or . . . 'naked assertion[s]' devoid of 'further factual enhancement'" will not suffice.). Accordingly, Plaintiffs' claim for intentional infliction of emotional distress fails.

### D.   Count V: Negligence

Lastly, Plaintiffs sued WTTG for negligence, claiming that WTTG "re-characterize[d] the controversy to mislead its millions of viewers to believe that Plaintiffs defrauded two unsophisticated homeowners in a business-to-consumer transaction," and accordingly breached its "duty to report on the occurrence in a manner that was fair, accurate, and complete." (Compl. ¶ 61.)

WTTG argues that Plaintiffs' negligence claim must be dismissed because there is no "separate claim for negligent publication" under Maryland law where a plaintiff already alleges defamation. (Mot. Dismiss at 18–19.) The Court agrees. *See Tani v. Wash. Post*, Civ. No. PJM-08-1130, 2009 WL 8652384, at *2 (D. Md. June 18, 2009), *aff'd*, 352 F. App'x 792 (4th Cir. 2009) (dismissing negligence claim that was "no more than a repackaged version of the libel claim"). Indeed, in their response to WTTG's motion to dismiss, Plaintiffs merely restate the elements of a defamation claim. (*See* Opp'n to Mot. Dismiss at 13, ECF No. 13.) Accordingly, Plaintiffs' claim for negligence is dismissed.

### V.   Conclusion

For the foregoing reasons, an Order shall enter granting WTTG's motion to dismiss Plaintiffs' claims for false light (Count III), intentional infliction of emotional distress (Count IV), and negligence (Count V) and denying WTTG's motion to dismiss Plaintiffs' claim for defamation (Count II).

DATED this ___12___ day of January, 2021.

BY THE COURT:

James K. Bredar
Chief Judge

11